AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Apple iPhone<br>Seized as FP&F No. 2023565300050301 Line 0002<br>("Target Device") | )<br>)<br>)  Case No.  **23mj1496-BLM**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 05/03/2023

*Judge's signature*

City and state: San Diego, California      HON. Barbara L. Major U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Blue iPhone
>Seized as FP&F No. 2023565300050301 Line 0002
>(**"Target Device"**)

the **"Target Device"**, as further described in Attachment A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Santiago VALENCIA-Vidales for transporting and moving illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of several cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On April 28, 2023, Border Patrol Agents P. Rivas, W. Swedberg, A. Walsh and Supervisory Border Patrol Agent (SBPA) K. Hamann were wearing their full rough duty uniforms with all agency badges, patches and insignia visible, while performing their assigned duties in the Brown Field Border Patrol Station's area of responsibility.

12. At approximately 4:44 PM, Agent Lawler utilized a scope to observe multiple individuals run out of brush and board a silver four door sedan in an area known to Border Patrol Agents as "Harvey Dennison's". This location is approximately two miles north of the United States/Mexico International Boundary and approximately four miles west of the Tecate, California Port of Entry. Agent Lawler observed the silver four door sedan travel onto the westbound lanes of State Route 94 (SR-94). Agent Lawler notified agents of his observations. Agent Walsh responded and was able to get behind the vehicle, to then observe it was a Honda Accord. Record checks revealed the Accord being registered out of Pahrump, Nevada with no prior travel history in the Brown Field Border Patrol Station's area of responsibility.

13. At approximately 4:58 PM, the Accord approached the SR-94 westbound Border Patrol Checkpoint. SBPA Hamann, Agent Swedberg and Agent Appelhans were performing their duties in the primary inspection area as the Accord approached. The driver, later identified as defendant Santiago VALENCIA-Vidales, was rapidly glancing back and forth between Agent Swedberg, SBPA Hamann and the road ahead. The Accord came to a brief stop and then accelerated through the primary lane as Agent Swedberg was attempting to inspect the vehicle and occupants. As the Accord fled from the primary inspection area, it drove over vehicle immobilization devices that were deployed by Agent

Swedberg, SBPA Hamann and Agent Appelhans. SBPA Hamann began to pursue the Accord. The Accord traveled west on SR-94 until it came to a stop due to its immobilization. It was able to travel for approximately three quarters of a mile and stop approximately 100 yards west of Honey Springs Road. Agent Hamann observed VALENCIA and five passengers exit the Accord and attempt to abscond.

14. Agent Hamann gave pursuit and was able to detain VALENCIA and the co-pilot passenger, later identified as defendant Jashaun Anthony Beau HARGRAVE. Agent Hamann asked them if they had any weapons, VALENCIA stated that he had a loaded firearm on the driver side of the Accord and HARGRAVE stated that he also had a firearm in the vehicle. Agent Hamann escorted both individuals back to his agency vehicle. Agents were able to detain the other four individuals and were also being held in SBPA Hamann's agency vehicle. This area is located approximately 10 miles west of the Tecate, California U.S. Port of Entry and approximately 7.5 miles north of the United States/Mexico International Boundary. Agent Hamann conducted an immigration inspection on the four rear passengers, including three later identified as material witnesses Oscar Giovanni GARCIA-Salazar, Jose GONZALEZ-Gonzalez and Ivan MENDOZA-Gomez. All four individuals stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 5:02 PM, SBPA Hamann placed all individuals under arrest.

15. At the time of arrest, a blue Apple iPhone **(Target Device)** was found in the center console of the Accord. VALENCIA claimed ownership of the **Target Device**. This device was subsequently seized.

16. Defendant HARGRAVE was read his Miranda Rights and stated that he understood his rights and was willing to speak without an attorney present. Defendant HARGRAVE stated he is from Chickasha, Oklahoma and currently lives in Pahrump, Nevada. HARGRAVE stated he and his friend, VALENCIA, driver of today's smuggling event, observed and responded to an add on Instagram, soliciting drivers to pick up illegals.

HARGRAVE stated they would be paid between $2,000.00 USD to $6,000.00 USD to pick up illegal aliens in San Diego, California.

17. HARGRAVE stated that he and VALENCIA arrived in San Diego on Wednesday, April 26, 2023 and stayed at a local motel awaiting further instructions from the smugglers. Two days later VALENCIA received a phone call from the smugglers and received the coordinates to the location where they were to pick up the individuals. HARGRAVE stated that upon arriving at the location, VALENCIA yelled "vamonos" (let's go) and four individuals emerged from the bushes and entered the back seat of the Honda. HARGRAVE stated they then proceeded to drive out of the area. HARGRAVE stated that as they approached the Border Patrol Checkpoint, they came to a brief stop. HARGRAVE stated that he began to take off his seat belt because he saw all the Border Patrol Agents, VALENCIA looked at him, shook his head and sped off. HARGRAVE stated he felt the vehicle drive over the "spikes". HARGRAVE stated the illegal aliens looked panicked. HARGRAVE stated that after approximately two minutes, the Honda came to a complete stop at which point VALENCIA said, "Run" and everyone exited the vehicle. HARGRAVE stated all four illegal aliens, VALENCIA and himself were apprehended shortly after. When questioned regarding the two firearms and marijuana discovered in the Honda, HARGRAVE claimed ownership of one pistol and stated the other pistol belongs to VALENCIA.

18. Material Witnesses GARCIA, GONZALEZ and MENDOZA stated that they are citizens of Mexico without proper immigration documentation allowing them to be or remain in the United States legally. GARCIA, GONZALEZ and MENDOZA further added that they made smuggling arrangements in which they were to pay the smuggling fee of $9,500.00USD to be smuggled into the United States. GARCIA, GONZALEZ and MENDOZA went on to say that they made their illegal entry into the United States on April 27, 2023, through the mountains and up to California State Route 94. GARCIA, GONZALEZ and MENDOZA had been informed by the footguide that a grey Honda

would be picking them up. Upon reaching SR94, the footguide left the group. MENDOZA stated that a grey Honda did arrive, and he heard HARGRAVE, shout out "Rapido, subanse al carro" (hurry, get in the car). GONZALEZ stated that when the grey Honda arrived, the footguide told him "Pa Arriba" (get in). MENDOZA stated that as the Honda approached the checkpoint, VALENCIA told them, "No levanten la cara" (Don't lift/show your face.) GONZALEZ said that he felt the vehicle go over speed bumps and saw that they were at an immigration checkpoint. GARCIA, GONZALEZ and MENDOZA said that as the vehicle sped away from the checkpoint they could hear sirens. MENDOZA went on to say that he felt the vehicle vibrating before coming to a stop. GARCIA stated he heard VALENCIA say "Ya valio madre" (its all ruined). GONZALEZ stated the vehicle eventually stopped and VALENCIA said "ya valio madre, chavos, corran!" (its all ruined, guys, run). MENDOZA stated the vehicle started slowing down and HARGRAVE said "ya valio" (we're ruined).

19. GARCIA, GONZALEZ and MENDOZA were shown two photographic lineups containing six pictures, to include one of VALENCIA and HARGRAVE. GARCIA was able to positively identify VALENCIA as the driver. GARCIA and GONZALEZ were able to identify HARGRAVE as the passenger of the Accord.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the defendant, Santiago VALENCIA-Vidales, was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as defendant VALENCIA, to attempt to minimize the amount of time he was involved in smuggling activities, and for the individual to be involved for

weeks and months longer than he claims. Accordingly, I request permission to search the **Target Device** for data beginning on **March 28, 2023, through April 28, 2023**.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.

22. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All

9

forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

//

//

//

//

//

//

//

10

## CONCLUSION

26. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling, a violation of Title 8, United States Code, Sections 1324.

27. Because the **Target Device** was seized at the time of Santiago VALENCIA-Vidales arrest; and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **March 28, 2023, through April 28, 2023**.

28. Accordingly, I request that the Court issues a warrant authorizing law enforcement to search the item described in Attachment A, and seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of May 2023.

_____
Hon. Barbara L. Major
United States Magistrate Judge

11

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue Apple iPhone
Seized as FP&F No. 2023565300050301 Line 0002
**("Target Device")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **March 28, 2023, through April 28, 2023**:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

13